INCORPORATED TOWN OF CARPENTER et al., Appellees, v. JOINT DRAINAGE DISTRICT No. 6 et al., Appellants.

DRAINS: Establishment—Jurisdiction—Irregularities Not Appealed
1 From. The mere fact that one member of the commission (the engineer) appointed to make survey and report as to the improvements petitioned for in an intercounty drainage proceeding, did not accompany the other two commissioners when they went over the district, *did not deprive the boards of jurisdiction to proceed and establish the district;* and a property owner who fails to avail himself of such irregularity by objection before the boards, and by appeal from an adverse decision, may not avail himself thereof by injunction to nullify the entire proceedings and to enjoin assessments.

DRAINS: Establishment—Jurisdiction—Permissible Drainage in Mu-
2 nicipalities. The board of supervisors has no jurisdiction to provide, within a municipality, for a system of drainage which materially departs from the scheme of agricultural drainage contemplated by the statute. So held where the system embraced storm sewerage and the draining of cellars.

*Appeal from Mitchell District Court.*—C. H. KELLEY, Judge.

, MARCH 13, 1924.

REHEARING DENIED JUNE 28, 1924.

SUIT in equity, brought against the joint boards of supervisors of Mitchell and Worth Counties, acting in behalf of the joint drainage district known as No. 6 and No. 51 in the respective counties, and against Jens Jacobsen and Lehigh Pipe & Sewer Company as contractors.    The relief sought is that the

proceedings of the joint boards in the establishment of such district shall be held absolutely null and void, and that they be enjoined from making any assessments of benefits pursuant thereto and from issuing any warrants in payment for any work done on the improvement projected for such district. The ground of such prayer is that the joint boards acted without jurisdiction, and that their action was induced by fraud and deceit, whereby their initial jurisdiction, if any, was completely destroyed. The decree granted the relief prayed, and wholly annulled all proceedings. The defendants appeal.—*Reversed.*

*Lovrien & Lovrien* and *Price & Burnquist,* for appellants.

*W. H. Salisbury* and *A. A. Kugler,* for appellees.

EVANS, J.—The drainage district involved herein comprises a part of two counties, Mitchell and Worth. In August, 1919, a petition in due form was filed before the respective boards of supervisors by certain petitioners as landowners in the proposed district, praying for the establishment of the district. These petitioners are now plaintiffs. The town of Carpenter is a small incorporated town which is located within the territory of the proposed district. The petition filed and presented to the respective boards was in all respects regular. Each board acted pursuant to Section 1989-a29, Code Supplement, 1913. This action was in all respects regular. Each county named a commissioner, and these commissioners appointed an engineer. The commissioners were the witnesses Ham, of Mitchell County, and Nack, of Worth County. The engineer selected was Boudinot, a nonresident of the county. On June 23, 1920, the commissioners met and went upon the district and viewed the same. They were accompanied by Iliff, an engineer, who was in the employ of Boudinot. Boudinot was not present on that date, nor was there ever a time when Boudinot and the two commissioners viewed the district at the same time. On June 25th, the commissioners filed their report approving the district and the report of the engineer. Boudinot joined with the commissioners in that report. His own report, as engineer, was not filed until

1. DRAINS: establishment: jurisdiction: irregularities not appealed from.

a later date. On August 3, 1920, he filed his engineer's report, which complied in all respects with the requirements of the statute, and comprised plats and complete specifications. This included the respective locations of the main and of all laterals, the size of tile, and the depth of the drain and the grade thereof at all points. The plats and specifications, however, were drawn upon white oiled paper, and are referred to in the record as tracings, Exhibits K and L. These so-called tracings were all incorporated later in blue prints, Exhibits N and O, and were filed on August 28, 1920. These blue prints and the preceding tracings are identical respectively in their contents. Exhibits L and O disclosed the drain and the laterals thereof in all their details throughout the district; whereas Exhibits K and N disclosed the same within the town of Carpenter. Thereupon, due notice was given to all interested parties, and a hearing was had pursuant thereto in November, 1920. Several of the petitioners were present at such hearing. The respective reports of the commissioners and the engineer, including Exhibits K, L, N, and O, were all before the joint board at that time. The joint board at that time purported to establish the district by proceedings that were regular in form. Afterwards, advertisement for bidders was made by appropriate notice, fixing a day. On that day also, some of the plaintiffs herein, of large interests in the drainage district, appeared, and saw the bids filed, and personally approved their acceptance. They were duly accepted. Pursuant to these bids, the defendant Jacobsen undertook to do the work for the entire scheme for $21,000, subject to extra compensation for excavating rock. The defendant Lehigh Pipe & Sewer Company contracted to furnish all the material for $19,000. Before the beginning of this suit, the larger part of this material had been delivered on the ground, and likewise the larger part of the labor had been performed by Jacobsen. In other words, the drainage of the farms had been in large part accomplished.

It will be noted from the foregoing that the plaintiffs have resorted to the extraordinary remedy of injunction, rather than to the statutory remedy provided in such cases. The remedy of injunction is not available to the plaintiffs unless they can show

the proceedings to have been wholly void,—not voidable,—for want of jurisdiction in the joint boards to establish the district. Plaintiffs have assumed this burden, and contend that they have met the same. The chief point of attack upon the procedure is that Boudinot, the engineer, did not accompany the commissioners at the time they viewed the district on June 23, 1920.

Section 1989-a29 provides:

"* * * and such commissioners and engineer shall together make a survey of the entire lands embraced in the district, and shall determine what improvement or improvements in the way of levees, drains, ditches or changing of natural watercourses are necessary for the reclamation of the lands described in the said petition;"

It is further provided therein:

"The engineer shall make a plat of all of the lands of said district, showing thereon the proposed improvements, the elevations and levels of said lands, so far as he may deem necessary, and a profile of said levee, drains, ditches or changes in any natural watercourse and shall file a copy in the auditor's office of each of said counties together with a full return of said commissioners and engineer, explaining the situation, describing the lands, the improvements, what effect said improvements will have upon the lands of said district, the course and length of any levee, drain, ditch or change of any natural watercourse through each tract of land, the estimated cost of the same, the dimensions of said improvement together with the names of the owners of all lands included within said district, as shown by the transfer books in the auditor's office, and which in their opinion will be affected or benefited thereby, together with such other facts and recommendations as to them shall seem advisable, and especially whether or not in their judgment such levee or drainage district should be established."

The emphasis of the attack is upon the statutory word "together." The point made is that, because the commissioners and the engineer, Boudinot, were not upon the ground at the same time, they violated or ignored the provisions of the statute, and thereby destroyed the jurisdiction of the boards of supervisors and rendered wholly nugatory all subsequent procedure. It is

further charged, in support of the same point, that the reports
of the commissioners and the engineer, as filed, failed to disclose
the true facts, in that they concealed the failure of the commis-
sioners and the engineer to go upon the ground at the same
time, or perhaps concealed the fact that Boudinot did not join
the commissioners on June 23d; and that the board of super-
visors were thereby deceived; and that they would not have or-
dered the establishment of the district if they had known of such
failure.    A collateral charge is made that the commissioners
were themselves deceived, in that they had never seen, or at least
had not examined, the plats and profiles after their filing as a
part of the engineer's report on August 3d and August 28th.
The joint board filed a formal defense herein.    The active de-
fense, however, was and is made by the defendants contractors.
Their response to the contention of the plaintiffs is fourfold:

(1)    That the charge of fraud is not true.

(2)    That the defects of procedure charged are not juris-
dictional.

(3)    That the plaintiffs in interest are estopped from main-
taining this action because they took substantially the full bene-
fits of the contract before they attacked it.

(4)    That they waived the alleged defect by failure to ap-
peal from the order of the board of supervisors establishing the
district.

It will be seen from the foregoing statement that the domi-
nant question in the case is whether, because of the alleged il-
legality, the joint board was without jurisdiction to establish
the district in question.    Because of the plea of estoppel, our
foregoing statement of the case has been made to include some
facts which are not material to the mere question of jurisdiction.

Whether the statutory word "together" will bear the load
which plaintiffs put upon it; whether the failure of the commis-
sioners' report to show that the commissioners and Boudinot did
not view the district at the same time amounted to a fraud;
whether the report of the engineer, with its plans and specifica-
tions, filed August 3d and August 28th contains such a depar-
ture in its specifications from the scheme of drainage contem-
plated by the original petition as to amount to a fraud; whether

any of the plaintiffs are estopped by their acceptance of benefits, —are questions upon which we are not disposed to predicate decision. None of them are essential to a determination of the question of jurisdiction. This latter question is the vital one. Because of its importance and its necessary effect upon future litigation, we are disposed to predicate our decision upon it, and for that purpose to assume, without conceding, the correctness of plaintiff's position upon all other tendered issues. If the joint boards had jurisdiction to establish the district, then the remedy of injunction is not available to the plaintiffs to challenge any illegality of procedure.

I.  Jurisdiction is the power of binding decision possessed by a judicial or a quasi judicial tribunal. It is conferred upon inferior tribunals usually, if not exclusively, by statute. Such was the jurisdiction, if any, which was exercised in this case. The jurisdiction, in its nature and scope, is defined by Section 1989-a1 *et seq.*, Code Supplement, 1913. The term ''jurisdiction'' is subject to some variation of meaning. That is to say, both its nature and its scope may, in a given case, be either enlarged or restricted by the statute which confers it. Under the statute, Section 1989-a1 *et seq.*, three phases or stages of jurisdiction are presented. Under Section 1989-a1, jurisdiction of the subject-matter of drainage district organization is broadly conferred upon a tribunal. Procedure for obtaining jurisdiction in the particular case is provided for in the subsequent subsections. Under Section 1989-a2, the filing of a petition by landowners imposes a duty and confers a jurisdiction upon the tribunal to act. The jurisdiction thus conferred is as broad as the duty to act. It is a restricted jurisdiction. It is not as broad as the subject-matter set forth in Section 1989-a1. It is a jurisdiction to investigate. The tribunal has power thereunder to appoint its agencies for investigation. It has the power of expenditure. It has the power and duty of considering the report of its engineer and its commissioners. It has power to approve or to disapprove the same. It may discharge its engineer and appoint another. It may reject a plan and require another. If, with the help of the statutory instrumentalities, it decides that the enterprise is expedient, then it enters upon another

stage of procedure. Pursuant to such procedure, it acquires an enlarged jurisdiction. This jurisdiction attaches to the property of individuals located within the proposed district. In order to acquire this jurisdiction, statutory procedure requires notice and a time of hearing. The fundamentals of jurisdictional procedure, under this part of the statute, are *notice* and a *day* of hearing. Such procedure being had, the jurisdiction acquired is complete in its nature and as broad in its scope as the subject-matter set forth in Section 1989-a1. The statutory requirement of notice and a day of hearing is one which will be strictly construed. But when jurisdiction has been acquired, pursuant to this provision of the statute, such jurisdiction cannot easily be defeated by illegalities of procedure, either prior or subsequent. On the contrary, the statute expressly requires a liberal construction of all the statutory requirements of procedure, in order to sustain the integrity of the jurisdiction of the statutory tribunal. This brings us to Section 1989-a46 of the 1913 Supplement, which provides as follows:

"Sec. 1989-a46. The provisions of this act shall be liberally construed to promote the leveeing, ditching, draining and reclamation of wet, overflow or agricultural lands; the collection of the assessments shall not be defeated, where the proper notices have been given, by reason of any defect in the proceedings occurring prior to the order of the board of supervisors locating and establishing the levee, ditch, drain or change of natural watercourse provided for in this act, but such order or orders shall be conclusive and final that *all prior proceedings were regular and according to law* unless they were appealed from."

Under the provisions of Section 1989-a3, 1913 Supplement, after notice of a day of hearing, and at the time of hearing, all prior procedure was subject to challenge, either as to its adequacy or its legality. At that time, it was the privilege of any person in interest to present his objections, either as to prior procedure or future proposals. Such was the privilege of these plaintiffs at that time. If they had then challenged the legality of the conduct of the commissioners and the engineer, it would have been the duty of the board to inquire into the facts and to

find the facts. If the decision had been adverse to these plaintiffs on such question, they had the right of appeal, under the statute. If the board had sustained their challenge, it still retained its initial jurisdiction, and still had power to correct the illegalities. It had power to reject the report and to require another. The mistakes of the engineer and the commissioners, if any, would not destroy the then existing jurisdiction of the board, such as it was. The sufficiency of the notice to property owners is not questioned. There was no challenge of the prior procedure. Therefore, under Section 1989-a46, the order of the establishment then made became conclusive of the legality of all prior procedure. Under the statute, such order by the board, after notice to the property owners, has the legal effect of a final adjudication. It will not avail plaintiffs to say that they had not then discovered the defects. They were just as discoverable then as they were at any time later. Much of what is complained of was discoverable upon the face of the files. But even that is immaterial. An adjudication is a bar to all further defense or challenge of every kind, regardless of the time of its discovery. If it were not, it would have no value. Its distinctive character is that it ends the litigation; and this is no less so if judgment be by default than if it be had pursuant to a trial contest. This provision of the statute has a very substantial reason for its being. If the jurisdiction of the board were subject, at any future time, to defeat because of discovered irregularities in procedure, the practical efficiency of the statute would be wholly destroyed. These drainage enterprises involve great expenditure, usually running into scores of thousands and often into hundreds of thousands of dollars. What laborer or materialman would dare offer his labor or his material to the construction of such an enterprise if, after he had delivered his material and expended his labor, he were to be subjected to total loss because some diligent beneficiary had discovered imperfection of statutory procedure? The case at bar, in many of its features, presents a good illustration of the reasonableness of this provision. On the day of letting the contracts, these defendants presented the best bids. One offered to do the labor for a minimum of $21,000, and the other agreed

to furnish the material at a minimum of $19,000.   Several of
these plaintiffs were present, and knew the price.   The uncer-
tain element was the question of rock, for which extra was to be
paid.   They all approved the bid, and the contract was let.   The
larger part of this work was done before this contest was made.
The farms of several of these plaintiffs are thereby drained by
an efficient system of drainage.   One of the objections urged
against the plan is that it was *too* efficient, and therefore too
costly.   The plans of the engineer called for a main line 36
inches in diameter at the outlet.   This necessarily meant great
expense, both for material and for labor.   A 36-inch drain
needs a depth of approximately 7 feet.   One of the disappoint-
ments, however, was the amount of the rock encountered.   This
trouble was intensified by the great depth of ditch required for
large tile.   The extra cost for excavating rock adds several
thousand dollars to the cost.   This necessarily operates as a
hardship upon somebody.   But why, in sound equity, should the
beneficiaries of such an enterprise be permitted to take its bene-
fits and thereafter to wipe out every vestige of legal right of
the laborer to recover his hire?   Such, however, would be the
frequent, if not usual, result, if illegality of procedure did de-
feat jurisdiction.   No inferior tribunal is proof against such
illegalities, and the whole trend of legal decision is to minify,
rather than to magnify, their effect.   The intent of the statute
is to make the board a judicial tribunal in the first instance,
and to give it original jurisdiction of all grievances arising out
of either procedure or performance.   From its decisions the ag-
grieved party may appeal, and be heard in equity both in the
district court and in this court.   The statutory remedy thus pro-
vided is simple in its operation and adequate in its power to
do full justice in the premises.   This Section 1989-a46 has been
frequently construed by us, and there is no variance in our
decisions thereon.   In *Lightner v. Board of Supervisors of
Greene County,* 145 Iowa 95, we said:

"Recurring again to Section 1989-a46 of the Code Supple-
ment of 1907, it will be observed that the collection of assess-
ments cannot be defeated where proper notices have been given,
by reason of any defect in the proceedings occurring prior to

the order of the board establishing the ditch or drain, and that such order shall be conclusive and final that all prior proceedings were regular and according to law unless they are appealed from. The same section also provides that the remedy by appeal is exclusive of all other remedies, and that failure to appeal is a waiver of any illegality in the proceedings.''

For a collection of our cases on the subject, see *Simpson v. Board*, 180 Iowa 1330.

Without pursuing the discussion further on this point, we hold definitely that, under Section 1989-a46, all objections to procedure had prior to the hearing, pursuant to notice, were required to be made at the time of hearing; that the board had full jurisdiction to pass upon them at that time; that the order of establishment made by the board, pursuant to good notice, was not only made with jurisdiction, but became, under the statute, conclusive of the regularity of all prior procedure. To express the statutory intent in other words, it is that the final jurisdiction acquired by good notice and hearing shall not be destroyed or affected by any irregularity in preliminary procedure.

II. Our foregoing conclusion is necessarily decisive of the case; but, in view of the scope of the argument for plaintiffs, we deem it proper to notice further some of the details of fact urged upon our consideration. It is urged by them that their attack upon the jurisdiction is predicated upon the ground of fraud; that fraud vitiates everything; that if, therefore, the board was induced to áct by means of fraud, its acts become nugatory on that ground. If we could say that there was evidence enough in the record to establish fraud, we should still have to say that Section 1989-a46 is just as conclusive against a charge of fraud as it is against any other charge of illegality. This is the necessary effect of an adjudication. Aside from this, we have scanned this record with great diligence, and have been unable to find the evidence of fraud as distinguished from mere illegality or failure to observe the strict requirements of the statute. *Who* is charged herein with fraud? The petition does not specify the person charged with the fraud, unless the inference be necessary that it was intended to charge some of

the defendants with fraud. The defendants are the joint board of supervisors and the drainage district and the two contractors. At the trial, it was stated into the record that no charge of fraud was made against any supervisors. The same disclaimer was made as to the commissioners. No disclaimer was made as to the defendant contractors. Neither was any evidence offered against either of them. They had nothing to do with the procedure claimed to be illegal. This was a past event when they appeared upon the scene. Clearly, therefore, there is no fraud shown here as committed by any defendant. The inference from the argument is that Boudinot must have been the perpetrator of the fraud. He is not a party to the action. He is in no manner affected by the result of it. Nor is there any evidence offered against him, unless it be deemed sufficient that he failed to appear and join the commissioners on June 23d, or unless it be inferred that his final report, with its plats and specifications, was such a departure from the original petition of the landowners as amounted to fraud. On its latter part, the petition of the landowners had a lead-pencil sketch, which indicated roughly the outlet and general course of drainage, including two or three laterals. The petition expressly disclaimed this sketch as being in any sense complete, and expressly prayed that the board establish such proper drains as might be necessary, and likewise such proper laterals. The particular point made by plaintiffs here is that this pencil sketch attached to the petition did not show any lateral extending into the town of Carpenter; whereas the plans presented by the engineer and adopted by the board included an extensive system of drainage for this town. The sketch attached to the petition was one which could be made in a mere moment by the use of a lead pencil. The argument of the plaintiffs necessarily adopts this sketch as a standard by which the engineer was bound, and as a criterion of the honesty of the engineer if he departed therefrom. Sufficient to say that the statute in express terms absolves both the board and the engineer from the obligation to conform to the plan of the petition. The failure of the engineer to appear on June 23d and to go over the district at the same time as the commissioners did is not necessarily inconsistent with honest

purpose. It could have been the result of a mistaken conception of a requirement of the statute. If fraud be found by inference, the inference must be drawn from the facts here stated. They warrant no such inference. The charge is wholly argumentative, and is not sustained by evidence.

III.   One of the features of the case relates to the drainage system provided for the town of Carpenter. This town is on the divide. It is, therefore, at the head of the system. Necessarily, therefore, its part of the system is the last to be installed. The main runs east and west, parallel with its south line, and two laterals are extended therefrom northerly through the town. Branches are run from these laterals. The system is only partially installed therein. The laying of this system in this town threatens to be very expensive, because of the presence of rock. The plans and specifications called for a depth of tile in this town sufficient to drain the cellars. This depth would not have been necessary for ordinary drainage, if cellar drainage were ignored. It was charged in the pleadings that the excessive depth required at the head of the system in this town rendered necessary a correspondingly increased depth all the way to the outlet, with the added penalty that the increased depth encountered the rock. This allegation, however, was contradicted by the testimony of plaintiffs' own witnesses. It appeared that there was a natural fall of the surface of 27 feet, from this town to the outlet, a distance of less than a mile, and that, therefore, the depth fixed for the town had no necessary influence upon the depth of the tile intervening between it and the outlet. It is further claimed that the system adopted for this town is excessive in its provisions, and that it is, in truth, an attempt to provide sewerage for the town,—more particularly, storm sewerage. Considerable evidence was devoted to this question.  It appears that drains have been laid along imaginary streets of the unplatted portion of the town, and that many intakes have been provided which would not have been necessary, except for the purposes of a storm sewer. In short, the issue here is whether the plans provide agricultural drainage for this territory, within the meaning of the statute, or whether

2. DRAINS: establishment: jurisdiction: permissible drainage in municipalities.

they provide for storm sewers. Under Section 1989-a38, jurisdiction is conferred upon the board to include a town within the drainage district. It has the same power over such territory as it has over any other territory in the district. But manifestly, the power to lay sewers in a town is beyond the scope of the subject-matter of the drainage jurisdiction conferred by Section 1989-a1. A farm drain and a storm sewer have much in common. Such a drain is necessarily a storm sewer in some degree. A storm sewer proper has no other function than to carry away surface water. Such is the function of a farm drain. Manifestly, therefore, there is a zone where the distinction between a surface-water drain and a city storm sewer might be difficult of determination.

Upon the whole record, we are constrained to say that the specifications of the contract are excessive in their requirements, if reference be had solely to the necessities of ordinary surface drainage. We find such requirements to be excessive (1) in the *number* of sub-branches laid through the town; (2) in the *depth* specified for such sub-branches; (3) in the number of *intakes* provided within the town.

Drainage of cellars is not a prime objective of a scheme of agricultural drainage under the statute. The same is to be said of storm sewerage.

The excess herein indicated must be characterized as an attempt to provide storm sewers for the town. This was a function of municipal authority alone. To this extent we find a lack of jurisdiction over the subject-matter, which no procedure could or can cure.

To the extent of the excess thus indicated, the performance of the contract will be enjoined. This inhibition will not apply to the four main branches extending into the town from the main drain of the district. The contract price of each contract shall be abated pro rata to correspond to the abatement of the performance.

IV. It is further urged by plaintiffs that defendant Jacobsen breached his contract in that he sublet some of the work in violation of the provisions of the contract, and that the work done under said contracts failed to meet the standards of the

contract. All this, if true, has no effect upon the jurisdiction of the board. Moreover, if the board was without jurisdiction, and was, therefore, amenable to injunction, there could be no breach of contract by Jacobsen. There would be no contract to breach. Inasmuch as we hold that the board had jurisdiction, and that the contract is valid, it is not subject to attack by the plaintiffs nor to injunction. They must present their grievances, if at all, by appropriate complaints to the board. The contractor cannot be subjected to the suit of individual landowners for breach of the contract or otherwise. It is the duty of the board, through its engineer, to see that the work is properly done, and the contractor is not required to debate the question with the various landowners. Plaintiffs' witness Teal was the engineer in charge of this work, and he testified frankly that the work was up to the standard. So that the plaintiffs have no grievance here, from any point of view.

Though we deem the matters discussed in Divisions II and IV hereof wholly collateral to the decisive issue, and without material influence thereon, we have deemed it proper to notice them because of the special emphasis placed upon them in the able briefs of plaintiffs' counsel.

We predicate our decision squarely on the ground indicated in Division I hereof, as modified by Division III hereof. The decree entered below is accordingly reversed, subject to the modification provided in Division III hereof. The cause will be remanded to the district court, which will retain jurisdiction thereof to hear and adjudicate any controversy which may arise between the parties as to the sufficiency of any purported compliance with the foregoing requirements, and as to the equitable abatement of the contract price as above provided.—*Reversed.*

ARTHUR, C. J., PRESTON, STEVENS, and FAVILLE, JJ., concur.