LOWELL CHURCHILL et al., Appellees, v. MILLERSBURG SAVINGS BANK et al., Appellants.

No. 40605.

MARCH 10, 1931.

*Swift, Swift & Elsenbast,* for appellants.

*Wallace & Claypool,* for plaintiffs, appellees.

*Crissman, Linville & Bleakley,* for Skinner Irrigation Company, appellee.

*James P. Gaffney,* appellee, pro se.

*E. J. Sullivan,* for George Fiser and Harry Fiser, Executors, appellees.

GRIMM, J.—On October 31, 1929, there was filed in the district court of Iowa County, Iowa, the petition of the plaintiffs, asking for a decree quieting title in the plaintiffs to the following described land, located in Iowa County, Iowa, to wit:

"The southeast one fourth of the southwest one fourth of Section two, and the north one half of the northwest one fourth of Section eleven, except the cemetery lot and Lot No. two of the northeast one fourth of the northwest one fourth of said section; also, the southeast one fourth of the northwest one fourth and the northeast one fourth of the southwest one fourth and the southwest one fourth of the northeast one fourth, and the northwest one fourth of the southeast one fourth of Section No. eleven, all in Township seventy-eight, Range twelve, west of the 5th P. M."

The title to all of this land was held by E. J. Baird, who, on April 5, 1906, died, leaving a will, Paragraph 4 of which contained the following:

"To my son C. W. Baird, during the period of his natural life, conditioned however, that the said C. W. Baird shall keep the taxes paid upon the said real estate, and in case he refuses or neglects to pay the taxes on said real estate within the period of six months after they become delinquent then and in that event, all his rights in and to the said lands shall cease and determine."

Paragraph 5 of said will is as follows:

"Upon the express condition that my beloved daughter-in-law Edith Baird shall survive my son C. W. Baird, I give, devise and bequeath unto the said Edith Baird the use of all the property described in Clause four hereof, subject to the terms and provisions of Clauses one-two and three hereof, so long as she remains the widow of my said son C. W. Baird, subject also to the same terms and conditions imposed upon C. W. Baird in Clause four hereof as to the payment of taxes and termination of right."

Other similar bequests were made to the other children of the testator. Paragraph 7 of said will is as follows:

"All the rest, residue and remainder of the property described in Clauses four and six hereof, remaining after the termination of the estate above provided for and granted conditionally to C. W. Baird, Edith Baird and F. L. Baird, I give, and devise unto the heirs of my three daughters, to wit: Jessie May Churchill, Grace W. Cover and Ethel Kelly. The word 'heirs' as used in the above clause shall be construed to mean the children of my said daughters who are living at the time of the termination of the rights of the said C. W. Baird, Edith Baird and F. L.

Baird, and the issue of such children in the event that any shall have died leaving issue. The intention hereof being that the said heirs of my said three daughters shall take the remainder of the said property above described in equal shares, and that if any of the children of either of said daughters shall die leaving issue, then, that said issue shall take the share the parents have taken if living.''

This will was duly admitted to probate in the district court of Iowa County, Iowa, on the 11th day of June, 1906. C. W. Baird, son of E. J. Baird, died November 24, 1928. Margaret Baird, widow of E. J. Baird, died March 5, 1929. Edith Baird, one of the defendants, is the surviving widow of C. W. Baird. Jessie May Churchill, Grace W. Cover, and Ethel Kelly are daughters of the said E. J. Baird. The plaintiffs, Lowell Churchill, Keith Churchill, Ethel Grimm, Vera Newberry, and Wanda Horrell, are the sole surviving children of Jessie May Churchill and Grace W. Cover. Ethel Kelly never had any children. Margaret Baird, widow of E. J. Baird, occupied said premises in person or through tenants up to the date of her death.

It is conceded that the first half of the taxes for the year 1928, payable in 1929, was not paid before or during the month of April, 1929. It is contended by the defendants that all of the taxes for the year 1928, payable in 1929, upon all of the land in controversy, except one certain 40 acres, were paid to the county treasurer of Iowa County, Iowa, before the first of October, 1929; while the plaintiffs contend that this payment was not made until the fourth day of October, 1929. It appears without dispute that the taxes on the certain 40 acres hereinbefore referred to, and particularly described as the ''southwest one fourth of the northeast one fourth of Section eleven, Township 78 north, Range 12,'' went to tax sale at the regular December, 1929, tax sale, and that the property was redeemed from tax sale January 16, 1930, by one of the defendants herein, the Millersburg Savings Bank, of Millersburg, Iowa.

C. W. Baird executed certain mortgages covering his interest in all the above-described property, in which mortgages his wife, Edith Baird, joined. All of these mortgages except one were owned by various ones of the defendants at the time of the trial of this case. One mortgage, which covered the southeast one fourth of the northeast one fourth of Section eleven, was owned

by the executors of the J. W. Shedenhelm estate. These mortgages covered only the interest of C. W. and Edith Baird, husband and wife, who, as it will be noted, were only to have, in any event, a life estate in the property.

It appears without dispute in the record that certain banks in Iowa County, Iowa, were depository banks for the county treasurer, and that the treasurer furnished to these banks printed forms, upon which the said banks could request of the county treasurer receipts for taxes on certain described lands, the amount of the taxes being credited to the treasurer on the bank's books. The Millersburg Savings Bank, of Millersburg, Iowa, was one of these depository banks. It is the claim of the appellants that these blank forms were filled in and used, and that credits were given the treasurer on the books of the Millersburg Savings Bank in such a manner as that the taxes on all of the property involved for the year 1928, payable in 1929, except upon the one 40 hereinbefore described, which we will hereinafter designate as "the Shedenhelm 40" were paid prior to October 1, 1929. The plaintiffs claim that the transaction between the Millersburg Savings Bank and the office of the county treasurer did not result in a payment of the taxes until October 4, 1929.

The plaintiffs contend, among other things, that the portion of the will of E. J. Baird hereinbefore quoted constitutes a conditional limitation, as the term is known in the law, and that, if the taxes on the land in question were not paid prior to October 1, 1929, the title passed to the plaintiffs, automatically.

The defendants make several answers to this position of the plaintiffs'. Some of these contested questions will now be considered.

I. Under the provisions of Section 6959 of the Code of 1927, real estate is listed, assessed, and taxed, year by year, for the period of a year, as of the first of January of each year. The listing and valuation occurs, however, only once in two years, on the odd-numbered year. There is no taxation for six months, or any fraction of a year. The "taxes" are for a year. Sections 7210 and 7211 of the Code of 1927 are as follows:

"7210. *Payment—installments.* No demand of taxes shall be necessary; but it shall be the duty of every person subject to taxation to attend at the office of the treasurer, at some time between the first Monday in January and the first day of March

following, and pay his taxes in full, or one half thereof before the first day of March succeeding the levy, and the remaining half before the first day of September following.''

''7211. *When delinquent.* In all cases where the half of any taxes has not been paid before the first day of April succeeding the levy, the amount thereof shall become delinquent from the first day of April after due; and in case the second installment is not paid before the first day of October succeeding its maturity, it shall become delinquent from the first day of October after due.''

We are confronted with the task of placing an interpretation on Paragraph 4 of the will of the said E. J. Baird, in the light of the facts, as they appear in the record, and the law. It is very apparent from a reading of the entire will that it was carefully prepared by some learned expert, familiar with conditional limitations and conditions subsequent. He must have been familiar with the law of Iowa.

In the Code of 1897, in force at the time the will was drawn, and valuable here only as showing the legal ''atmosphere'' in which the will was drawn, Section 1403 reads as follows:

''*Payment—installments.* No demand of taxes shall be necessary, but it shall be the duty of every person subject to taxation to attend at the office of the treasurer, at some time between the first Monday in January and the first day of March following, and pay his taxes in full; or one half thereof before the first day of March succeeding the levy, and the remaining half before the first day of September following; but in all cases where the half of any taxes has not been paid before the first day of April succeeding the levy, the whole amount charged against such entry shall become delinquent from the first day of March after due; and in case the second installment is not paid before the first day of October succeeding its maturity, it shall become delinquent from the first day of September after due. In all cases where taxes are paid by installment, each of such payments, except road taxes, shall be apportioned among the several funds for which taxes have been assessed in their proper proportions.''

Since taxes are assessed for periods of one year at a time, and under the law of Iowa as it obtained when this will was

drawn, October 2, 1905, what was the intention of the testator? It will be noted that Paragraph 4 of the will reads:

"[The life tenant] shall keep the taxes paid upon the said real estate, and in case he refuses or neglects to pay the taxes on said real estate within the period of six months after they become delinquent then and in that event, all his rights in and to the said lands shall cease and determine."

It will be noted that the word "taxes" is used, and not "installments of taxes." Is it not fair to assume that the skilled individual who drew the will would, had the testator intended to provide a forfeiture in the event an "installment" of taxes was not paid, have written, instead of the language herein last above quoted, the following?

"Shall keep the taxes paid upon the said real estate, and in case he refuses or neglects to pay *any installment* of taxes on said real estate within six months after *said installment* becomes delinquent, then and in that event, all his rights in and to the said lands shall cease and determine."

There is nowhere in the will any reference to an installment of taxes. The law provided, at the time the will was made, that taxes might be paid in installments. It also provided that, if the first half was not paid "before the first day of April succeeding the levy, the whole amount charged against such entry [first installment] shall become delinquent from the first day of March after due; and in case the second installment is not paid before the first day of October succeeding its maturity, it shall become delinquent from the first day of September after due." All parties were bound to know, however, that the legislature might change the law.

Manifestly, the purpose of the testator in providing that the life-estate holder should pay the taxes was to protect the title to the property, for the benefit of the remaindermen, from alienation by tax sale. Under the law as it obtained when the will was drawn, tax sales were to be held annually on the first Monday in December; and two years and nine months from the date of said sale, the holder of the certificate of purchase might cause to be served upon the person in possession and upon the person in

whose name the same was taxed a notice of the taking of tax deed. (Section 1441 of the Code of 1897).

Immediately after the expiration of 90 days from the date of the completed service of the said notice, the treasurer might make out a tax deed. Section 1442 of the Code of 1897.

The testator must have had in mind to pass the title to these remaindermen for failure to pay taxes in ample time so that the remaindermen could redeem from any tax sale after the property passed to them, and before the sale ripened into a deed. The remaindermen had an abundance of time after the expiration of the six months following the first of October, in which to redeem from tax sale. It will thus be seen that the manifest purpose of the testator could be as well protected upon the theory that the word "taxes" means all of the taxes for the year as upon the theory that the word "taxes" refers to an installment.

In this particular case, the taxes in controversy were those for the year 1928, payable in 1929. All of said taxes became due and payable on the first Monday of January, 1929, and it was the statutory duty (Section 7210, Code of 1927) of the party obligated to pay the taxes to pay the same in full between the first Monday in January and the first day of March following; but the legislature saw fit to give the party obligated to pay the taxes an option to pay one half of the taxes before the first day of March and the remaining half before the first day of September following. Did the taxes in question, in contemplation of the language of Paragraph 4 of the will of E. J. Baird, become delinquent on April 1, 1929, or did the "taxes" for 1928, payable in 1929, on the real estate in question, become delinquent on October 1, 1929?

After a very careful examination of the record, and having in mind the manifest purposes of the testator in making this provision in his will in reference to the payment of taxes, realizing the provisions of law in relation to the payment of taxes in installments, and the manifest knowledge and skill of the person who drew the will for the testator, we are constrained to hold that the word "taxes," as used in said Paragraph 4, referred to the entire taxes for the year 1928, payable in 1929. The entire "taxes" for the year 1928 were not delinquent until October 1, 1929. It follows, also, that no forfeiture obtained herein until six months thereafter: that is to say, until April 1, 1930.

It was the manifest desire of the testator to help Edith Baird. It is inconceivable that, in doing so, by a provision in his will, he should seek to set a trap for her by which she might easily be deprived of the benefits provided for her in his will. It is much more reasonable to assume that, had he intended forfeiture for a failure to pay an *installment* of taxes, the will would plainly have so provided.

It is conceded by all parties hereto that all of the taxes on all of the land involved in this suit were paid by direct payment or by redemption not later than January 16, 1930. These payments were made partly by the life tenant, Edith Baird, and partly by others who were interested in her.

For the purposes of this opinion, we will assume, though not deciding, that the will under consideration contains a conditional limitation, rather than a condition subsequent; nevertheless, under the construction which we place upon the will, there was no forfeiture, and the plaintiffs were not entitled to the relief granted them by the trial court.

In view of our interpretation of the will, it becomes unnecessary for us to discuss any of the other questions ably and exhaustively argued by opposing counsel.

The cause must be, and is,—*Reversed.*

FAVILLE, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.