## WHICHER *v.* BD. OF COM. OF CEDAR CO.

Greene.
1g 217
c121 293

It is a matter of discretion with the county commissioners, to allow or refuse compensation to an attorney, for defending a pauper prisoner by direction of the district court.

### ERROR, *to Cedar District Court.*

Stephen Whicher, Esq. made application to the commissioners of the county of Cedar, for compensation as an attorney under the direction and appointment of the district judge, in defending a pauper prisoner.    The commissioners declined making satisfactory allowance; and the claim was submitted by agreement to the district judge, who decided that an attorney is not entitled to remuneration from the county, for such services.

*Stephen Whicher, pro se.    Rev. Stat.* p. 155, § 64, provides that the court shall assign counsel to defend the prisoner, in case he cannot procure counsel for himself.    The plaintiff in error having been assigned by the court, no choice was left him in regard to his rendering the service.    He was an officer of the court, and in common with every citizen of the United States, was entitled to the benefit of the provisions of the constitution: "Nor shall private property be taken for public use without just compensation." (Art. 5, Amendments to the constitution of U. S.)    This clause in our constitution, is only declaratory of natural law, as recognized and admitted by all civilized nations. Puffendorf's Law of Nations, Book 8, p. 116.    It is due to the defendant to say, that on the first trial, this principle was fully recognized; nor was it denied by them in the district court.    The question between the parties has always been, what shall be the amount of compensation? and it is hoped that this court will permit the parties to litigate their rights in their own way, so long as they limit themselves to matters pertaining to the courts jurisdiction; and that the court below be so instructed.

The services were rendered in legal contemplation, at the request of, and for the county. The parties contracting are, the defendant on the one part, and the plaintiff on the other; both parties are competent to contract. The services having been performed, application is made for payment; the party for whom services are performed, says he will give $25, and tenders an order for that amount. The claimant, like Oliver Twist, "wants more," and appeals to the sense of justice of the same party, for a larger amount to be given through the medium of a jury, in the district court of the same county. It is simply a matter of negotiation between the two original contracting parties, and it has never assumed any other character.

In this state of the case, the claimant insists that it is not competent for the district judge to interfere; and on pretence that no action at law will lie, decide that the claimant shall have nothing—shall not have even what the county has expressed a willingness to pay. If the party employing had taken the ground that the services were gratuitous, there might be some propriety in sustaining one of the contracting parties.

*R. P. Lowe,* for the plaintiff. The foregoing suggestion made by Mr. Whicher, seems to merit the particular attention of the court, as illustrating the impropriety of the court below stepping in between the parties, and dissolving a subsisting and recognized liability, and a liability which the counties of this state, and many other states have ever been deemed, (without exception, as far as inquiry has been made,) resting under, when services have been rendered for their pauper criminals. I consider the practice of assigning counsel by the court to those unable to employ for want of means, when arraigned for crime, sanctioned by the wisdom of all courts, and the common consent of the country; compensation to the counsel thus appointed has ever been acquiesced in as proper and just, until the judge of the district court broke in upon it in this case. It must be admitted that the interest and honor

Whicher *v.* Cedar Co.

of each county, require that its pauper criminals should be defended when put on trial, and have a fair and impartial trial; the question is, whether this defence shall be made at the expense of one individual, (and perhaps he not a citizen of the county, as was the case here,) or at the common expense of the county. A pauper is fed at the common charge of the county, and it is equally right and proper that his life, and liberty, and reputation, when assailed, should be protected and preserved in the same manner, yet the court below has in effect ruled that the counsel thus appointed, shall, at his own expense, (and this sometimes is very considerable, when the venue is changed,) and without compensation for his services, defend a pauper criminal, although the obligation to do so attaches itself to the community at large, and not to the lawyer alone. This ruling of the court is unsustained by reason or precedent, and in opposition to the uniform practice of the courts every where.

*J. P. Cook,* prosecuting attorney, for the defendant. The plaintiff in error seems to argue this case as though the court below had, at some stage of the proceedings, erroneously interfered and assumed the province of the parties themselves; and claims, that because the defendants saw proper to allow him a reasonable compensation, to get rid of his importunities, with which he was not satisfied, but took an appeal for the purpose of getting a larger fee, and the court deciding that he was not entitled to anything, thereby erred in the decision. Now the facts are, that this is an agreed case, and the only question submitted to this court is the broad one, are the commissioners bound to pay an attorney for services of this kind? If they are, it presents an inconsistency that can only apply to this peculiar case, namely, that of a party feeing and paying the attorneys on both sides: and if this doctrine is to be the settled practice in the state, it will not be necessary hereafter for any criminal who stands indicted to employ counsel, but has only to say to the court that he is unable so to do, and request the court to appoint his own choice from among the members of the bar, (having had a previous understanding with the attor-

ney,) thereupon the court appoints; and while the county have
to pay an attorney to prosecute criminals, they are also com-
pelled to pay attorneys to defend.    There is an inconsistency
about it that cannot be reconciled with common sense.    It is
true, our statute provides that the court shall appoint counsel
for the accused when unable to obtain it otherwise ; but this
does not impose a duty on any member of the bar to accept
the appointment : if he does accept it, there is not the same
liability or responsibility upon him as though employed by the
criminal himself.    Neither is the attorney bound, when he ac-
cepts the appointment, to follow the case to another county in
case the venue is changed, as is presupposed by the plaintiff in
error.

The plaintiff in error argues the case as though it had long
been a settled practice in the states to allow bills of this kind.
Now, we deny any such settled practice ; and this is the first
instance in Iowa where an attorney has set up any such claim ;
and there are numerous instances where members of the pro-
fession have served in that capacity : and when an attorney
appears under such circumstances, he does so as the friend of
the court, and we hope the court will not establish a precedent
that will compel the counties in this state to pay attorneys for
their ingenuity in letting loose upon the community every rene-
gade vagabond that may come among us, when the law compels
the same counties to pay for their prosecution.

*Opinion by* HASTINGS, C. J.    This case was submitted to
the district court upon an agreed statement of facts ; and the
question before that court, and now pending for the decision of
this court, is, whether the plaintiff has a legal right to recover
compensation of the county of Cedar, for services rendered a
pauper indicted for a crime and tried in said court ; the plain-
tiff having been assigned to defend the accused by order of the
court.    The statute provides, that " the court shall assign
counsel to defend the prisoner, in case he cannot procure coun-
sel for himself."    There is no statute providing for compensa-
tion for services rendered in such cases.    If the board of com-

Whicher v. Cedar Co.

missioners choose to compensate an attorney for such services, we see no objection; but this is a matter left to their discretion.

In this case, it seems the defendants allowed the plaintiff $25, from whose decision the plaintiff appealed, and thereby determined to abide by his legal rights against the defendants.

The arguments of plaintiff in error, and the venerable authority (Puffendorf's Law of Nations) to which he refers, address themselves more properly to the general assembly, who have the power of making laws providing for the compensation which he seeks to recover.

It is not in the power of this court to make laws providing for such compensation.

Judgment affirmed.

*Dissenting opinion by* GREENE, J. I cannot agree with the majority of the court in deciding this case. The law expressly provides that the court shall assign counsel to defend the prisoner in case he cannot procure counsel himself. *Rev. Stat.* p. 155, § 64. When a duty is enjoined by statute, the means of enforcing it are necessarily implied, if not expressed. Where a prisoner cannot procure counsel for himself, the duty is imperative upon the court to assign counsel; and when thus appointed, it is the duty of counsel to attend as promptly to the prisoner's cause, and to advocate his legal rights with as much zeal and fidelity as though he had been retained and liberally feed by him. The same responsibility, both legal and moral, devolves upon him. A sense of duty must prompt him to bestow the same care, skill, anxiety, labor, and time upon the cause of his poor client, as though he had an abundance with which to reward his efforts. And can it be presumed, that the law imposes such labor and responsibility upon an attorney, without contemplating any remuneration?

It cannot well be assumed that the attorney need not render the service—that he need not accept the appointment. The assignment or appointment of a court cannot thus be disregarded. An attorney, as an officer of the court, is bound to obey

its orders. It must be apparent that the law would be inoperative—could have no effect, if the position is correct, that an attorney need not accept or serve when appointed, and is entitled to no compensation; ·under such circumstances, what lawyer could be· expected to serve? What poor prisoner be furnished with counsel?

No sound rule of construction, as I view the matter, can justify the position, that a statute may command and not be obeyed; that it may prescribe a rule and leave its performance discretionary with those upon whom it is intended to operate; that it may order a public functionary to extend certain rights and protection to a poor citizen, and afford him no power or means for bestowing them; or that it will require of a citizen arduous and responsible duties, without contemplating adequate remuneration. Laws should be construed, so as to give the most ample effect to the object of their enactment.

It is not compatible with the just and liberal policy of law, to subject a few citizens to the performance of important duties, and afford no means of compensation. When service is enjoined by law upon an officer of the court, or upon any person, reasonable remuneration is necessarily implied; and when the service is rendered in a criminal prosecution, either for or against the accused, and he is unable to pay the costs, they are ordinarily paid by the counties in which the proceedings were commenced. If clerks and sheriffs are thus paid fees for services rendered in behalf of the poor accused, why not pay, in the same way, an authorized attorney for much more responsible and important services. Besides, the poor are under the particular supervision of the county commissioners; and, if the ordinary revenue of the county is not sufficient for the support of the poor, they are authorized to levy and collect a poor tax. *Rev. Stat.* p. 498, § 13. The authorized bill of the merchant, and of the physician, is paid without a murmur; and they may or may not furnish what is wanted for the poor; how then can the propriety of paying the attorney's bill be questioned, when he is authorized by law; nay, even required to render valuable services, perhaps indis-

pensable to the character and happiness of a poor man, and of those with whom he may be related.

That the county commissioners have the authority to allow counsel fees, in such a case, is manifestly conceded by the opinion of my brother judges. They say, "if the board of commissioners choose to compensate an attorney for such services, we see no objection; but this is a matter left to their discretion." With deference, I must say, that this view does not altogether harmonize with the balance of the opinion. Surely the commissioners cannot compensate an attorney at their discretion, unless authorized by law to do so. Can they have discretionary power to do an unlawful, unauthorized thing? If authorized to remunerate a man for legitimate services, then are they required to do so; especially when the service is acknowledged, as in this case; and conceded to be worth $25, but not as much as counsel claimed.

Believing it also to be the intention of law to impose equal taxes, and equal liabilities upon the people, in proportion to their means, I cannot be reconciled to the conclusion that it is just or rational to impose such burdens upon a man without an adequate reward. I can but regard the judgment of the district court, and of my brothers in this case, as erroneous.