Dwight E. Nystrom, petitioner, v. District Court of Iowa in and for Woodbury County, respondent.

No. 48260.

(Reported in 58 N.W.2d 40)

April 8, 1953.

Corbett & Corbett, of Sioux City, for petitioner.

T. George Gilinsky, of Sioux City, for respondent.

SMITH, C. J.—On March 3, 1952, respondent-court, Judge George W. Prichard presiding, made an order to show cause why Dwight E. Nystrom, petitioner herein, should not be adjudged in contempt for failure to pay support money and alimony as had been decreed November 9, 1950, against him as defendant in the case of Velvia Pauline Nystrom v. Dwight E. Nystrom. Hearing thereon was set and notice served for April 7, 1952, but no record hearing was held on that date.

On April 10 respondent caused a bench warrant to issue pursuant to which a hearing was held on April 14 and continued from that date to April 21 and again to April 28, 1952.

On the latter date Nystrom was held to be in contempt of court on two grounds: 1. Failure to pay "support money etc. as ordered by the court"; and 2. Remarriage within one year from date of divorce, without permission of court. On each count a jail sentence was pronounced (the two to run "consecutively"), an appeal bond was fixed and mittimus ordered "withheld until further order of the court."

The present proceeding is brought to test the validity of said finding and order.

The notice to Nystrom of the March 3 order first fixed the date of hearing as March 7. It was drawn by Mr. McEntaffer, attorney for the Probation Department of the Woodbury County District Court. Service was not then made as Nystrom was out of the city. Later the notice was altered and served to require appearance April 7, but no new order was made.

Nystrom and his attorney appeared at the hour set (April 7, 10 a.m.) and not finding the presiding judge there called in Mr. McEntaffer. They discussed the matter and arrived at an agreement, subject to approval by the court, that Nystrom

pay $80 that day and make up his remaining deficiencies in payment at the rate of $10 a week over and above his regular payment. The other three judges of the district being busy the attorneys later submitted the proposal to Judge Ralph C. Prichard who orally approved the proposed settlement. Mr. McEntaffer was instructed to prepare a formal order that the hearing would be indefinitely continued upon the prompt payment of the decreed amount, plus the additional $10 each week. Nystrom drew a check that day for $80.

This check came back the next day marked "insufficient funds." The deputy clerk in charge called Nystrom who promptly made it good with a new check that cleared.

On April 10 Judge George W. Prichard, who had made the original order to show cause and evidently did not know what had transpired April 7, called Attorney Corbett and ordered him to produce his client in court that afternoon. The attorney was unable to get word to Nystrom but did reach his client's father and prevailed on him to advance the total amount necessary to clear up all arrearages of alimony and support payments. After delivering check for this amount Mr. Corbett says he went to the courtroom of Judge George Prichard with the clerk's receipt therefor and "advised him that all deficiencies * * * had been paid up and that if he [his client] had been in contempt of court for failure to pay he was now purged of that contempt."

The judge then for the first time raised the question of Nystrom's remarriage within the year without judicial consent. Mr. Corbett says (in the record): "I advised the court that I couldn't and wouldn't produce the defendant that afternoon, whereupon the court had a bench warrant issued for the defendant."

There is no substantial conflict in the record as to what had happened and as to the conditions existing. Attorneys Corbett and McEntaffer are in practical agreement as to the events of April 7. Judge Ralph Prichard, while having no clear recollection of details, says they "explained to me the arrangement on which they had agreed * * *" and "I said, anything made with the approval of Mr. McEntaffer I had no objection to it. If he would prepare an order to that effect I would sign

it. The order was not presented to me and as to what occurred thereafter I have no knowledge whatsoever."

Attorney McEntaffer explains he did not prepare the order for Judge Ralph Prichard's signature because he was advised that Nystrom's $80 check had not cleared. Apparently he did not know it had later been made good.

Judge George Prichard thinks he was in his office the morning of April 7 until 10 :05 when he "stepped over to the City Hall * * * and was gone a little less than 25 minutes and left word with the reporter and bailiff" when he would be back. He adds: "I was also present that afternoon."

The facts pertaining to Nystrom's arrearages and of his remarriage in another state shortly after the divorce decree was entered are undisputed. His conduct in those respects cannot be condoned or excused. Disapproval of his remarriage was warranted and a certain amount of judicial anger is very understandable. But was defendant in contempt on either count?

I. The record shows without conflict that on April 10 petitioner's arrearages in payment of alimony and support money were completely liquidated by payment in full of the total amount due. Prior to that time, on April 7, the agreement had been made between attorneys and Judge Ralph Prichard that it might be gradually absorbed by an additional weekly payment of $10. The fact this arrangement was never reduced to writing and formally approved by judicial entry need not disturb us here in considering whether petitioner was in contempt on April 28 for failure to make payments "as ordered by the court."

Section 598.15, Iowa Code, 1950, authorizes punishment for contempt "if any party against whom such decree has been entered, shall *willfully* disobey the same * * *." (Emphasis supplied.) See Porter v. Maxwell, Judge, 208 Iowa 1224, 226 N.W. 917.

It may be doubted if there is any evidence of wilfulness shown in connection with petitioner's arrearages. But we prefer to rest our decision upon the fact that the arrearages had been liquidated at the time the bench warrant issued. Section 665.5, Iowa Code, 1950, certainly contemplates that the remedy by imprisonment for contempt is for the purpose, not of punishing

past default, but of compelling payment: "If the contempt consists in an omission to perform an act which is yet in the power of the person to perform, he may be imprisoned *until he performs it.*" (Emphasis supplied.) Code sections 598.15 and 665.5 are properly construed together. See Roberts v. Fuller, Judge, 210 Iowa 956, 968, 229 N.W. 163, 168, where we said: "The petitioner can obtain his release by obeying the order of court and paying said alimony." Certainly payment before sentence should be held to preclude imprisonment that would otherwise terminate if and when payment was made.

Even under the general authority inhering in all courts to punish for contempt it has been said the object and purpose "is not to punish a public offense, but to compel obedience to and respect for the order of the court." Gibson v. Hutchinson, Judge, 148 Iowa 139, 140, 126 N.W. 790, Ann. Cas. 1912B 1007; State v. Baker, 222 Iowa 903, 905, 270 N.W. 359. And concerning contempt proceedings for failure to pay alimony it is said in 18 Iowa Law Review 66, 67 (November 1932) the purpose "is not to penalize the defendant but rather to secure the payment of the alimony."

 It seems to be the general rule that prompt compliance after institution of contempt proceedings with the court order or decree alleged to have been disobeyed will usually be regarded as a sufficient purging, "especially where no material injury or loss has been suffered by the party for whose benefit the action was taken." 17 C. J. S., Contempt, section 105. No such loss or injury is shown here, and we are of the opinion the court had no right to pronounce a sentence for imprisonment after compliance with the alimony and support provisions of the divorce decree. No further purpose was to be served except punishment, and Code section 665.5 does not authorize imprisonment for that purpose.

II. Section 598.17, Iowa Code, 1950, provides: "In every case in which a divorce is decreed, neither party shall marry again within a year * * * unless permission to do so is granted by the court in such [divorce] decree." The following Code section makes a marriage contrary to the provision of section 598.17 a misdemeanor and punishable accordingly. The remar-

riage is not even declared to be illegal. Farrell v. Farrell, 190 Iowa 919, 925 et seq., 181 N.W. 12; Dudley v. Dudley, 151 Iowa 142, 145, 130 N.W. 785, 32 L. R. A., N. S., 1170.

Apparently the bar of this Code section was written into the divorce decree in the instant case, since both parties assume it in argument. The record does not show. Respondent's argument even contends the statute *required* it to be expressly embodied in the decree. We do not so interpret the statutory language.

In some states the statute *empowers* the court to restrict remarriage by provision in the decree. 27 C. J. S., Divorce, section 162. On the contrary our statute *automatically* denies the right to remarry within the one-year period. Provision in the decree for that purpose is not contemplated, and if inserted is surplusage. It can add nothing to the statutory mandate. The conclusion logically follows that such remarriage without judicial permission written into the decree is a violation of statute but not a contempt of court.

We have difficulty finding authority directly in point. Apparently the attorneys found none. It seems established that resistance to, or refusal to obey, a void order or a void provision in a decree cannot furnish basis for contempt proceedings. Burtch v. Zeuch, 200 Iowa 49, 52, 53, 202 N.W. 542, 39 A. L. R. 1349; Geneva v. Thompson, 200 Iowa 1173, 206 N.W. 132; 17 C. J. S., Contempt, section 14, citing many cases including the foregoing Iowa decisions. The analogy in that respect between a void provision and one that constitutes surplusage seems logical.

Jurisdiction has been defined as "the power of binding decision possessed by a judicial or a quasi judicial tribunal." Incorporated Town of Carpenter v. Joint Drainage District, 198 Iowa 182, 187, 197 N.W. 656, 658, 199 N.W. 265. See definitions in 21 C. J. S., Courts, section 15.

The addition to a divorce decree of an injunction against remarriage is not under our statute the exercise of a "power of binding decision." If authorized, the only purpose it could serve would be to create an additional sanction to compel obedience to a statute which prescribes its own sanction. However desirable such result may be it is unauthorized by the statute.

Injunction will not lie at the suit of an individual to restrain commission of a merely criminal act unless it threatens plaintiff with some special injury, not common to the general public but peculiar to himself. "There must be some interference, actual or threatened, with property or other rights which chancery will undertake to protect, or some additional element bringing the case within the domain of that court." Farmers Co-Operative Assn. v. Quaker Oats Co., 233 Iowa 701, 703, 7 N.W.2d 906, 908, citing 28 Am. Jur., Injunctions, section 148, page 336. See also 43 C. J. S., Injunctions, section 150.

By fair analogy a court of equity may not (in absence of statutory authority) by an injunctive provision in a divorce decree lay the foundation for a contempt proceeding to punish a misdemeanor committed by violation of a statutory ban against remarriage.

We think the court here acted without authority and the order holding petitioner in contempt of court must be annulled on both charges.—Writ sustained.

BLISS, GARFIELD, WENNERSTRUM, MULRONEY, HAYS, THOMPSON, and LARSON, JJ., concur.