LeRoy R. HARKINS, appellee, v. LUCILLE M. HARKINS, appellant.

No. 51206.

(Reported in 127 N.W.2d 87)

MARCH 10, 1964.

C. J. Lambert, of Sigourney, for appellant.

Baumert & Gerard, of Sigourney, for appellee.

THORNTON, J.—The record shows the parties were divorced in Illinois. By proper action in the Keokuk District Court the Illinois decree was established in Iowa. The Iowa decree provided for weekly payments of $22 for alimony. This amount was later modified on application and stipulation to $15 per week. Appellant-wife seeks to have plaintiff, her former husband, punished for contempt for failure to pay weekly installments in the total sum of $1557.50 which have accrued since the modification.

It was stipulated the amount claimed in arrears was correct and plaintiff had failed to make the following weekly payments, six in 1956, seven in 1957, one in 1958, 24 in 1959, 18 in 1960, 25 in 1961, and 23 in 1962. Appellant's application also alleged plaintiff had secreted his property.

The hearing was held January 2, 1963. Appellant introduced

the stipulation and decree. The only testimony was that of plaintiff. He testified he made payments at all times while he was employed and that at the times he did not make the payments he was laid off from his employment. Currently he was laid off July 20, 1962, and had not received a check from his employer, John Deere Ottumwa Works, and only one unemployment compensation check. He explained his failure to receive an unemployment check as follows:

"I could have drawn unemployment compensation in 1962 when I was laid off if I had made application for it. I didn't make application; I wanted to get my weeks built up. That was absolutely the only reason."

Plaintiff has a guaranteed annual wage but the amount thereof is not clear. Plaintiff did say, "It runs about $29 a week last time. * * * If I had been paid more for the weeks that I actually worked during the year, more than enough for the $29 per week for the year, I wouldn't get anything more." His take-home pay is as low as $55 to $60 per week. He had $5 per week withdrawn for Government Bonds. The bonds are cashed; they were used in adding three rooms on plaintiff's home. This home is held in the name of his present wife's daughter. He testified, "She didn't put any money into it." Plaintiff has two cars, a 1949 and 1960 Ford. Of these he says:

"I only have one car; an old Ford. My family has a big car, a Ford. I got it in 1960. It was new then. I still have the car in the family. I drive it very little. The money that went into that car originally was money I earned. I have both of my cars licensed in my wife's name."

Concerning his unemployment compensation, plaintiff testified:

"I was drawing compensation at the rate of $32 a week and if it wasn't making up the annual wage, I would draw some more. * * *$62 is the most I have ever drawn a week from John Deere and unemployment compensation. In 1961 I was drawing $60. I drew $23 from John Deere. That was beside my unemployment compensation, which was $30 a week. That would be around $52 [sic] a week. I drew that through 1962, except the times when I worked full time. Just about the same in 1961.

You always lose three or four weeks before you get started."

Plaintiff's testimony relative to the year 1962 is conflicting. He also testified he received only one unemployment compensation check for $32 in the year 1962. Plaintiff, on questioning by the court, testified he did not have any guaranteed salary coming from his employer for the year 1962.

Plaintiff has the home in Martinsburg. It consists of a house and seven lots. The value is not shown. As stated, this home is in his present wife's daughter's name. He testified, "I own my own home." Plaintiff's bonds were used in adding three rooms to the home. He also raises about 25 or 30 pigs a year, he had five weighing 50 pounds each at the time of the hearing. The evidence shows plaintiff's present wife has a restaurant in Hedrick, three miles from Martinsburg. Concerning the restaurant plaintiff testified:

"At the time I married my present wife, she didn't have any money to put into the community. Now she carries that restaurant in her name and she carries all the bank accounts that I have, in her name. * * * She didn't work any until she started this restaurant."

Plaintiff stated he did not deposit his paychecks in the bank accounts. There is no showing what money went into or the present amount, if any, of a bank account. Plaintiff testified, "There has never been a time that I could have paid when I was not working." and "I have no funds with which to pay this back alimony at this time." and "We do not have any property in the family other than the equipment in the restaurant, the two cars, our pigs and our home."

For reversal defendant urges the trial court was in error in failing to find plaintiff in contempt after it made findings of fact establishing necessary facts to so find, in dismissing the proceeding, and in not granting a new trial.

Actually the court found plaintiff has no funds with which to pay the back alimony at the present time and the evidence failed to establish the failure to comply with the decree has been willful.

That review by appeal is proper see Bixby v. Bixby, 253

Iowa 1172, 1174, 115 N.W.2d 852, 854, and Penland v. Penland, 255 Iowa 308, 122 N.W.2d 333.

■ Our review is not de novo nor is the decision of the trial court lightly reversed; and the evidence to sustain the act charged must be clear, satisfactory and convincing. See Clark v. District Court, 255 Iowa 1005, 1011, 125 N.W.2d 264, 268; Brody v. District Court, 250 Iowa 1217, 1221, 98 N.W.2d 726; and Watson v. Charlton, 243 Iowa 80, 92, 50 N.W.2d 605.

■ However, appellee is confronted with a different rule in alimony payment cases. The act charged—failure to pay—is readily proved, here it is established by stipulation, this makes a prima facie case. The burden then falls on appellee to purge himself of contempt. Here he attempts to show his inability to pay. This places on him the duty of making a full and fair disclosure of his income and property.

Section 598.15, Code of Iowa, 1962, provides, "* * * shall willfully disobey the same, or secrete his property, * * *."

In Roberts v. Fuller, 210 Iowa 956, 961, 229 N.W. 163, 165, we said, "* * * the record abundantly satisfies us * * * that petitioner did not sustain the burden resting upon him to purge himself of contempt."

In Roach v. Oliver, 215 Iowa 800, 805, 244 N.W. 899, 902, we said, "* * * we must hold that the record is not such as to show the petitioner's inability to pay. He has not sustained the burden resting upon him to purge himself of contempt."

In Pewick v. Meyer, 202 Iowa 134, 136, 209 N.W. 396, 397, we said, "The writ is sustained, solely upon the ground that the showing made by petitioner was sufficient to excuse him from punishment for contempt."

The majority of other states hold the burden rests upon the alleged contemnor to prove his inability to comply with the decree. Annotation, 53 A. L. R.2d 607 et seq. The alleged contemnor has complete knowledge of his resources, such burden is properly placed on him.

■ The test is not merely whether appellee is presently working or has current funds or cash on hand, but whether he has any property out of which payment can be made. An examination of Porter v. Maxwell, 208 Iowa 1224, 226 N.W.

917, and Pewick v. Meyer, 202 Iowa 134, 209 N.W. 396, shows that in both cases the inquiry was more than as to present income or cash but included any other property.

This record clearly shows appellee was not working at the time of the hearing and had not been for five months. He has no cash or present funds to apply on the payments in arrears. He has started to draw unemployment compensation. To the extent he is able, some amount of this should be applied on the current payments due appellant.

The record made by him shows he owns two cars, the value is not shown, they are not in his name. It also shows he owns a home, again not in his name, he has secreted property. No explanation was offered by him. The effect is to place the cars beyond the reach of appellant and to deny her any lien rights she may have as to the home. The appellee has failed to show the value of the cars and home, to this extent he has not made a full and fair disclosure of his property.

This brings us to the delicate question of how much, if any, property he may have and not be guilty of willful disobedience of the decree. He must be in a position to work when he is recalled by his employer or finds other employment. The record does not indicate waste or extravagance, but because of appellee's failure to show value this is left in doubt. It is apparent a large portion of the amount in arrears was caused by appellee's failure to apply any of the proceeds of his unemployment compensation and guaranteed annual wage checks when he was receiving $52 per week from these sources. The total so received is not shown, but he should have been able to pay some or all of the $15 weekly payments when he did receive $52 per week from unemployment compensation and guaranteed annual wage checks. What property he has accumulated is to this extent at the expense of appellant. To this extent his conduct was willful.

■ The purpose of contempt proceedings is not to punish a public offense, but to compel obedience to and respect for the order of court. Nystrom v. District Court, 244 Iowa 735, 739, 58 N.W.2d 40.

■ The appellee has made a satisfactory showing to purge himself of contempt insofar as present ability to pay is con-

cerned from earnings or cash on hand. He is unemployed. He cannot pay the amount in arrears from his unemployment compensation checks, but from this source he is bound to make some payments.

We think the trial court's determination was correct as far as it goes and for us to order this appellee's commitment would be to lightly reverse. However, we do think appellee has secreted property within the meaning of section 598.15, Code of Iowa, 1962, in carrying his automobiles and home in the name of others. The decision of the trial court is therefore modified and remanded for a decree requiring appellee to take all steps necessary to obtain the return of the title to the automobiles and to the home in Martinsburg, Iowa, occupied by appellee on January 2, 1963, to his own name, and to effect such return within 60 days from the issuance of the procedendo in this case and if such steps are not taken within 60 days he is to be committed to the county jail for a period of 30 days.—Modified and remanded.

All JUSTICES concur.