**Allen Eugene McNABB, Plaintiff,**

v.

**Judge Robert OSMUNDSON, and The Iowa District Court for Johnson County, Defendants.**

No. 64621.

Supreme Court of Iowa.

Jan. 20, 1982.

Richard H. Zimmerman, Mears, Zimmerman & Mears, Iowa City, for plaintiff.

Thomas J. Miller, Atty. Gen., and John R. Martin, Asst. Atty. Gen., for defendants.

REYNOLDSON, Chief Justice.

We granted certiorari in this case to determine whether an indigent facing a jail sentence in a contempt of court proceeding has a right under the United States Constitution to be provided counsel at public expense.

Plaintiff McNabb was obligated under an October 13, 1977, dissolution decree to pay $30 per week toward the support of his minor daughter. He made no payments and the Johnson County Attorney caused him to be cited for contempt, the mother having assigned the support payments to the Iowa Department of Social Services. *See generally* § 598.34, The Code.

As this case finally reaches us after a series of district court actions, petitions for certiorari, stays, a remand, and a retained jurisdiction by this court, it appears that plaintiff McNabb, after a brief pro se appearance comprising only two and one-half pages of printed transcript, was sentenced to 232 days in the county jail, two days for each of 116 unpaid installments of child support. The order provided McNabb could purge himself of contempt by payment of $480 and weekly payments of $50, of which $30 was to apply on the current installment and $20 to the delinquent amounts.

After McNabb spent eight days in jail, his present volunteer counsel, citing *United States v. Anderson*, 553 F.2d 1154, 1156 (8th Cir. 1977), persuaded the defendant court to suspend the sentence pending a hearing on a motion to reconsider the sentence, and the refusal to appoint counsel.

A subsequent hearing at which McNabb was represented by his volunteer counsel developed that McNabb is about twenty-three years old, has no property, and suffers from epilepsy. He takes medication in an effort to control symptoms of his epilepsy, but has a drinking problem that exacerbates his incidents of seizures. He has never held a job that would pay more than the minimum wage, has never held any job over three months, and has been living with his parents. At least some of his unemployment history may be attributable to his epilepsy. The total support McNabb has paid is $100, which he borrowed from his parents after being jailed in this action. The final financial statement in the district court file reflected that McNabb was then employed earning $35 to $40 weekly, had earned $1341 in the past twelve months, owned no property or motor vehicle, had no bank account, and owed debts totaling $316.40. Trial court found McNabb was indigent, but refused to appoint counsel.

Thus the posture of the case when we granted certiorari was that McNabb had been found in contempt of court and sentenced to 232 days imprisonment, of which 8 days had been served and the balance suspended pending future hearing. Trial court had consistently refused to appoint counsel at public expense although finding McNabb indigent. Upon application of the county attorney the district court had issued still another order requiring McNabb to appear and show cause why he should not be held in contempt of court.

In this proceeding McNabb raises three issues: (1) Is an indigent faced with the possibility of incarceration for contempt for not paying child support entitled to court-appointed counsel under the United States Constitution? (2) Should a contempt order and sentence incarcerating an indigent who is without counsel be vacated? (3) In a contempt proceeding under section 598.23, The Code, is it legally permissible to incarcerate an indigent who has no ability to make payment to purge the contempt? In the course of this proceeding, McNabb also moved for allowance of his attorney fees in this court. We ordered this motion submitted with the case.

I. *Did McNabb Have a Constitutional Right to Counsel in the Contempt Action?*

■ Section 665.4, The Code, delineates the punishments for contempt "where not otherwise specifically provided." In the underlying support proceeding the punishment is specifically provided in section 598.23, The Code, the relevant portion providing that

[i]f any party against whom any ... final decree has been entered shall willfully disobey the same, or secrete his property, he may be cited and punished by the court for contempt and be committed to the county jail for a period of time not to exceed thirty days for each offense.

It is apparent that the full application of these penalties under the district court's rationale (that each unpaid support installment was a separate contempt) would subject this indigent to imprisonment for al-most ten years. *Cf. Wilson v. Fenton*, 312 N.W.2d 524, 529 (Iowa 1981) (punitive fine under section 665.4(2) can be levied retrospectively for separate acts of contempt); *Clark v. District Court*, 255 Iowa 1005, 1010–11, 125 N.W.2d 264, 267–68 (1963) (same). This potential sentence justifies our position that the nebulous distinctions between civil and criminal contempts are of no consequence in this jurisdiction. *Knox v. Municipal Court*, 185 N.W.2d 705, 707 (Iowa 1971). The jail doors clang with the same finality behind an indigent who is held in contempt and incarcerated for non-payment of child support under section 598.23 as they do behind an indigent who is incarcerated for violation of a criminal statute. In *Lutz v. Darbyshire*, 297 N.W.2d 349, 353–54 (Iowa 1980), we wrote:

Contempt proceedings are commonly treated as criminal in nature even when they generate from civil cases. ... Exercise of the contempt power is a delicate one requiring care to avoid arbitrary or oppressive conclusions.

. . . .

... This proceeding was criminal in nature. The plaintiff's personal liberty was at stake.

*See Wilson*, 312 N.W.2d at 528.

McNabb contends the sixth amendment and the due process clause of the fourteenth amendment to the United States Constitution require that he, an indigent, be provided counsel when confronted with the loss of his liberty.

■ We believe the protections that shelter this defendant are to be found in the due process clause of the fourteenth amendment, although sixth amendment decisions of the Supreme Court may influence our determination. The case before us involves an alleged indirect, or constructive, contempt. An indirect contempt is an act committed outside a court's presence that obstructs or prevents the administration of justice. *Lutz*, 297 N.W.2d at 353. A direct contempt consists of contemptuous actions committed in the presence of a court. *Gibb v. Hansen*, 286 N.W.2d 180 (Iowa 1979); *Knox*, 185 N.W.2d at 707. The due process

requirements surrounding an indirect contempt proceeding were laid out in *In re Oliver*, 333 U.S. 257, 275–76, 68 S.Ct. 499, 508–09, 92 L.Ed. 682, 695 (1948):

> Except for a narrowly limited category of contempts, due process of law ... requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, *have the right to be represented by counsel,* and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eyes of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority ... before the public." If some essential elements of the offense are not personally observed by the judge, ... due process requires ... that the accused be accorded notice and a fair hearing *as above set out.*

(Emphasis added.) We adopted and quoted most of this language in *Knox*, 185 N.W.2d at 708. However, the issue raised here was not present in *Knox*, where an attorney was appointed for the contemner without dispute. *See Knox*, 185 N.W.2d at 707.

Of course, it is plain that the *right* to be represented by counsel does not answer the question when and in what circumstances the due process clause *requires* that an attorney be appointed for an indigent. *See Lassiter v. Department of Social Services*, 452 U.S. 18, 33–34, 101 S.Ct. 2153, 2163, 68 L.Ed.2d 640, 653 (1981); *Gagnon v. Scarpelli*, 411 U.S. 778, 787–91, 93 S.Ct. 1756, 1762–64, 36 L.Ed.2d 656, 664–67 (1973). Nor have the opinions of the United States Supreme Court laid out a clear path to the answer.

In *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), a juvenile proceeding characterized as "civil," Gault, a fifteen-year-old boy, was committed as a juvenile delinquent to the Arizona State Industrial School. The Court, reversing and remanding, held:

> We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency *which may result in commitment to an institution in which the juvenile's freedom is curtailed,* the child and his parents must be notified of the child's right to be represented by counsel retained by them, or *if they are unable to afford counsel, that counsel will be appointed to represent the child.*

*Gault,* 387 U.S. at 41, 87 S.Ct. at 1451, 18 L.Ed.2d at 554 (emphasis added). The *Gault* Court observed that a proceeding in which the issue whether a child "will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution." *Id.* at 36, 87 S.Ct. at 1448, 18 L.Ed.2d at 551. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), were cited in *Gault* for the proposition that the presence of the juvenile court judge did not satisfy the juvenile's constitutional right to representation. *Id.* at 36 n.57, 87 S.Ct. at 1448 n.57, 18 L.Ed. 2d at 551 n.57.

The *Gideon* Court held the sixth amendment guarantee of counsel in criminal cases was made obligatory upon the states by the fourteenth amendment. *Gideon,* 372 U.S. at 339, 83 S.Ct. at 794, 9 L.Ed.2d at 802 (specifically overruling *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942)). Later, in *Argersinger v. Hamlin*, 407 U.S. 25, 38, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530, 538 (1972), the Supreme Court held "that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." Completing the circle, the *Argersinger* Court, confronted like the *Gideon* Court with a sixth amendment right to counsel issue, nonetheless found support in *Gault,* a decision root-

ed in the due process clause of the fourteenth amendment. *Argersinger*, 407 U.S. at 33–34, 92 S.Ct. at 2010–11, 32 L.Ed.2d at 536.

This cross-fertilization of concepts between the sixth amendment and due process rights to counsel in cases involving the possibility of or actual imprisonment was apparent in subsequent federal circuit court decisions. Several courts, considering instances of civil contempts, relied on *Argersinger* in ruling that an indigent faced with the prospect of imprisonment must be afforded appointed counsel. *United States v. Anderson*, 553 F.2d 1154, 1156 n.2 (8th Cir. 1977); *In re Di Bella*, 518 F.2d 955, 959 (2d Cir. 1975); *In re Kilgo*, 484 F.2d 1215, 1221 (4th Cir. 1973). The Ninth Circuit in a decision filed four months after *Argersinger*, *United States v. Sun Kung Kang*, 468 F.2d 1368, 1369 (9th Cir. 1972), reached the same result without reference to *Argersinger*. Later, however, in *Henkel v. Bradshaw*, 483 F.2d 1386, 1389 (9th Cir. 1973), the same circuit recognized that *Argersinger* only prohibited imprisonment of an unrepresented indigent who was facing a contempt action for nonpayment of child support, stating, "The state trial judge, now cognizant of *Argersinger*, will most assuredly know that if a lawyer is not appointed for Henkel's representation, Henkel cannot be confined even if found to have been contemptuous."

State court decisions were in similar disarray over the teaching of *Argersinger*. Compare, e.g., *Tetro v. Tetro*, 86 Wash.2d 252, 254–55, 544 P.2d 17, 19 (1975), with, e.g., *Sword v. Sword*, 399 Mich. 367, 380–81, 249 N.W.2d 88, 93 (1976).

Finally, in *Scott v. Illinois*, 440 U.S. 367, 368, 99 S.Ct. 1158, 1159, 59 L.Ed.2d 383, 385 (1979), the Supreme Court sought to "resolve a conflict among state and lower federal courts regarding the proper application of our decision in *Argersinger*." Scott had been convicted of shoplifting and fined $50 in a criminal proceeding. Five members of the Court reasoned that

> [W]e believe that the central premise of *Argersinger*—that actual imprison-

ment is a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound and warrants adoption of *actual imprisonment as the line defining the constitutional right to appointment of counsel. . . .* We therefore hold that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be *sentenced* to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense.

*Scott*, 440 U.S. at 373–74, 99 S.Ct. at 1162, 59 L.Ed.2d at 389 (emphasis added).

█ Thus the United States Constitution as interpreted by the Supreme Court does not require appointment of counsel in a nonfelony criminal case where the defendant only faces the possibility of imprisonment or a fine. The line is drawn at actual imprisonment. Because that Court appears to make no distinction between a sixth amendment right to counsel and a right to counsel under the fourteenth amendment in cases involving the threat of, or actual, imprisonment of an indigent otherwise entitled to unconditional freedom, we believe *Argersinger* and *Scott* apply in this case.

█ We are mindful that the federal judiciary is supreme in exposition of the law of the United States Constitution, which is the supreme law of the land. *See, e.g., Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (Michigan Supreme Court reversed on federal constitutional grounds); *Cooper v. Aaron*, 358 U.S. 1, 18, 78 S.Ct. 1401, 1409–10, 3 L.Ed.2d 5, 16–17 (1958). We therefore make no attempt to arrive at our own independent interpretation of the United States Constitution, but follow the federal decisions as we understand them. Nor does this petition raise the question of this indigent's rights under the unique language of the Iowa Constitution, article I, section 10, "In all criminal prosecutions, and in cases involving the . . . liberty of an individual the accused shall have a right . . . to have the assistance of counsel." Because this is not a criminal prosecution, we are not required

to examine our provisions relating to appointment of counsel in simple misdemeanor cases, found in rule 42(3), Iowa Rules of Criminal Procedure ("In cases where the defendant faces the possibility of imprisonment, the court shall appoint counsel for an indigent defendant in accordance with procedures established under R.Cr.P. 2(3).").

If under the United States Constitution the right to appointed counsel for an indigent in a nonfelony criminal prosecution attaches only when actual imprisonment will result, as is plain from *Argersinger* and *Scott*, then the Supreme Court would not set a higher standard in a proceeding that is not a criminal prosecution in which an indigent will not actually be incarcerated. We see no valid ground to draw a criminal vis-a-vis civil distinction. The fourteenth amendment does not require more of our civil law than the sixth amendment requires of the criminal law.

Defendant court relies on *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), and particularly the "balancing" analysis of the latter case, in contending this indigent could be jailed without being represented by counsel at his first hearing. We think these decisions are inapposite. The *Gagnon* Court held that appointed counsel was not required in all probation revocation hearings, but of course the probationer had been previously sentenced and did not come before the revocation hearing entitled to his unconditional freedom. In short, he had already been granted, in the trial resulting in his conviction, the constitutional protections of counsel, jury trial, and the proof beyond a reasonable doubt standard. *Lassiter* addressed the question whether counsel must be provided in actions for termination of parental rights, a situation not involving deprivation of physical liberty. The Court, referring to *Argersinger* and *Scott*, carefully pointed out that it has refused to extend the right to appointed counsel to criminal cases not involving loss of personal liberty. *Lassiter*, 452 U.S. at 25, 101 S.Ct. at 2158–59, 68 L.Ed.2d at 649.

We hold, under the above Supreme Court decisions, McNabb was entitled to counsel in the first hearing that resulted in his incarceration, and will be entitled to counsel in any subsequent hearing if it will result in the loss of his physical liberty.

This holding necessarily will require the trial judge and counsel prosecuting a contempt proceeding to engage in what the *Argersinger* Court termed a "predictive evaluation" of each case to determine whether there is a significant likelihood that if the indigent is found in contempt the judge will sentence him or her to a jail term. *Argersinger*, 407 U.S. at 42, 92 S.Ct. at 2014, 32 L.Ed.2d at 541. If so, counsel must be appointed. If the alleged contemner is only to be "jaw-boned," such appointment is not required under the United States Constitution.[1]

II. *Should McNabb's Jail Sentence be Vacated?*

■ Our holding in division I dictates the resolution of this issue. Counsel for the district court concedes that if McNabb was denied appointed counsel unconstitutionally, his sentence must be vacated. *See Wilson*, 312 N.W.2d at 529.

III. *Is the Inability to Pay a Viable Defense in a Section 598.23 Contempt Proceeding?*

■■ McNabb argues it is impermissible to incarcerate an indigent who has no ability to make payment to purge the contempt. He relies on *Nystrom v. District Court*, 244 Iowa 735, 738–39, 58 N.W.2d 40, 42 (1953), where this court observed that "[s]ection 665.5, Iowa Code 1950, certainly contemplates that the remedy by imprisonment for contempt is for the purpose, not of punishing past default, but of compelling payment." This language was part of the discussion of the issue whether full payment

---

1. We reserve the issue of what other punishments are permissible in a § 598.23 contempt action.

of support arrears precluded incarceration under sections 598.15 and 665.5, The Code 1950. This court held that full payment after receipt of an order to show cause but before the contempt hearing barred incarceration. McNabb also cites *Harkins v. Harkins*, 256 Iowa 207, 212, 127 N.W.2d 87, 90 (1964), where this court relied on *Nystrom* while declaring that the purpose of a contempt action under section 598.15, The Code 1962, was coercive, not punitive.

However, in *Ogden v. Iowa District Court*, 309 N.W.2d 401, 401 (Iowa 1981), we pointed out that section 598.22, The Code, had effectively overruled *Nystrom*. The relevant provision of the statute declares:

> Prompt payment of sums required to be paid under sections 598.11 and 598.21 shall be the essence of such orders or judgments and the court may act pursuant to section 598.23 regardless of whether the amounts in default are paid prior to the contempt hearing.[2]

The pertinent language of section 598.23, quoted in division I, is primarily punitive and only indirectly coercive, particularly viewed in light of the above-quoted portion of section 598.22. Any language to the contrary in *Harkins* is now overruled. *See In re Marriage of Welsher*, 274 N.W.2d 369, 372 (Iowa 1979).

Thus a parent who has delinquent child support payments under a valid decree would be in contempt of court if he or she gambled away a sizable inheritance that could have been used to pay the past-due installments and would be subject to imprisonment under section 598.23, despite being indigent when brought before the court. The language employed in opinions addressing coercive-type imprisonment, that contemners carry "the keys of their prison in their own pockets," *Shillitani v. United States*, 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622, 626 (1966), has no application in the case of an indigent contemner serving a punitive sentence for a past violation of a court decree. A section

598.23 sentence of incarceration, based upon a willful contempt in not paying past installments of child support provided in a valid decree, shown by clear and convincing evidence, may stand despite a jail-door offer of payment or even the present inability of the contemner, through indigency, to make payment. Therefore, McNabb's argument goes too far and we reject it.

IV. *McNabb's Right to Court-Appointed Counsel in this Certiorari Action.*

■ McNabb made application to this court for appointed counsel after certiorari was finally granted. The response filed by the assistant attorney general for the defendant district court conceded the importance of the issue involved and that appointment at the appellate level "is therefore necessary to ensure an adequate presentation of the merits and to otherwise ensure fundamental fairness." Our order provided:

> Because of the similarity of the issues presented, it is ordered that plaintiff's motion for court appointment of counsel be submitted with the certiorari case, any ruling thereon allowing such appointment to be effective retroactively to commencement of the certiorari proceeding.

■ It is of course true that ordinarily attorney fees cannot be allowed in the absence of statutory or contractual authority. *Wilson*, 312 N.W.2d at 529. Even the provisions for allowance of fees to the initiating party in a contempt action for nonpayment of child support do not apply in an original certiorari action in this court. *Lane v. Oxberger*, 224 N.W.2d 245, 247–48 (Iowa 1974).

But here counsel was representing the unconditional liberty interest of an indigent sentenced to jail without counsel, vindicating basic constitutional rights. Certiorari was the only review available. § 665.11, The Code. An indigent's right to counsel at the district court would be of limited value if he or she were not permitted counsel to review and correct district court errors.

---

**2.** This paragraph became part of the Iowa Code in 1970. *See* 1970 Session, 63rd G.A., ch. 1266, § 23.

The constitution may mandate the appointment of counsel with the concomitant obligation on the part of the public fisc to pay fees in the first instance when, as here, the state is the initiating party. *See Lassiter,* 452 U.S. at 27–29, 101 S.Ct. at 2160, 68 L.Ed.2d at 650; *Little v. Streater,* 452 U.S. 1, ——, 101 S.Ct. 2202, 2210–11, 68 L. Ed.2d 627, 639 (1981); *Scott,* 440 U.S. at 372–73, 99 S.Ct. at 1161–62, 59 L.Ed.2d at 388–89; *English v. Missildine,* 311 N.W.2d 292, 294 (Iowa 1981) (investigative services fees must be paid for indigent criminal defendant notwithstanding lack of statutory authorization if constitution requires).

In *Young v. Whitworth,* 522 F.Supp. 759, 763 (S.D.Ohio 1981), the court held that counsel must be provided in nonsupport contempt actions and noted:

It would be inane to try to understate the impact our ruling will have on state courts. The fiscal and administrative burdens accompanying this decision will be heavy. In this time of budget-cutting and tax reduction, these burdens may seem even more severe. We are, however, convinced that the fundamental nature of physical liberty requires the imposition of this burden.

We agree. Since 1850 Iowa has stood among that strong minority of states (16 out of 34 jurisdictions that have addressed the issue) holding lawyers compelled to represent indigents must receive reasonable compensation. Shapiro, *The Enigma of the Lawyer's Duty to Serve,* 55 N.Y.U. L. Rev. 735, 756–62 (1980).

In *Hall v. Washington County,* 2 Greene 473, 474 (Iowa 1850), plaintiff Hall was appointed to represent an indigent defendant in a criminal case tried before the supreme court under a statute that provided "[t]he court shall assign counsel to defend the prisoner, in case he cannot procure counsel himself." The *Hall* court held that because the statute required the court to appoint counsel and the lawyer in turn could not refuse to provide services, the latter had a "right" to reasonable compensation for those services. *Id.* at 476. That right was described as "complete, without

further legislative enactment," and a "fundamental rule of right," foundationed on the constitutional mandate " 'that private property shall not be taken without just compensation.' " *Id.* at 478. *See* U.S. Const. amend. V; Iowa Const. art. I, § 18 ("Private property shall not be taken for public use without just compensation . . . ."). The same issue was presented in *Ferguson v. Pottawattamie County,* 224 Iowa 516, 278 N.W. 223 (1938), where the court reached the same result with respect to attorneys appointed to represent juvenile delinquents in municipal court. The *Ferguson* court approvingly quoted from *Hall,* and in summary stated:

We think this case comes squarely within the principles of law announced in *Hall v. Washington County,* 2 G. Greene 473. The rule there announced has been the law of this state for over three-quarters of a century and has never been changed. The law as so announced has been followed and supported ever since in the following cases: [citing five Iowa decisions]. We see no reason why these cases should be overruled at the present time.

*Ferguson,* 224 Iowa at 520, 278 N.W. at 225.

The concept that attorneys can be compelled to represent indigents but constitutionally cannot be compelled to provide services without compensation historically has been implemented by Iowa statutes and traced in the language of our opinions. In *Schmidt v. Uhlenhopp,* 258 Iowa 771, 775, 140 N.W.2d 118, 121 (1966), while framing the issue, this court said:

The question for the trial court to decide here was whether petitioner was unable to employ counsel. Ability to employ counsel fairly implies ability to pay him reasonable compensation. As the trial court recognized and as Code section 775.5 . . . contemplates, an attorney should not be expected to defend an accused gratuitously.

There is nothing to logically distinguish *Hall* from the case before us. There the statute required that "[t]he court shall assign counsel to defend the prisoner, in case he cannot procure counsel himself." *Hall,* 2

Greene at 474. Here, as we have held in division I, the United States Constitution required appointment of counsel for this jailed indigent in district court. This requirement continues in an appellate court proceeding to review trial court's rulings. *Douglas v. California*, 372 U.S. 353, 355–58, 83 S.Ct. 814, 815–17, 9 L.Ed.2d 811, 813–15 (1963); *Roberts v. Bennett*, 258 Iowa 1101, 1106, 141 N.W.2d 628, 631 (1966); *Weaver v. Herrick*, 258 Iowa 796, 803, 140 N.W.2d 178, 182 (1966).

Counsel's application for appointment in this court, submitted with the case, presents an issue we cannot avoid. To hold that compensation must be paid when a *statute* requires counsel to be appointed, but cannot be paid when the *constitution* mandates such an appointment, would be incongruous.

Nor do we see any necessity to penalize McNabb's counsel because in this instance he undertook McNabb's defense below at the request of the Johnson County Bar Association. After filing the petition now before us he filed application for appointment, including payment of transcript costs. As implied in our order reserving ruling, we should consider his application as though we were ruling at the commencement of this proceeding. So viewing the issue, it now is obvious that counsel should have been appointed as the constitution commands, and that this lawyer is the logical appointee. There remains the question of fixing his compensation. In prior decisions, in absence of statutes implementing constitutional rights, we have not hesitated to prescribe minimal standards to be followed. *See, e.g., Forst v. Sioux City*, 209 N.W.2d 5, 8 (Iowa 1973). Here, fortunately, we have an analogous statutory guideline to employ, section 815.7, The Code.

We appoint McNabb's present attorney, Richard H. Zimmerman of Iowa City, as counsel for McNabb in this certiorari proceeding, effective retroactively to his first supreme court appearance in attempting to challenge the district court's imprisonment ruling. Fees shall be fixed by the district court, using the statutory guidelines of section 815.7, The Code. *See also Hulse v.*

*Wifvat*, 306 N.W.2d 707 (Iowa 1981). The costs of this proceeding shall include transcript fees.

The writ is sustained. The district court ruling and judgment sentencing McNabb to imprisonment shall be vacated by the district court. Pursuant to our above decision, as long as McNabb is indigent he cannot be imprisoned as a result of any future proceedings unless counsel is appointed to represent him.

WRIT SUSTAINED.

All Justices concur except UHLENHOPP and McGIVERIN, JJ., who concur in part and dissent in part.

UHLENHOPP, Justice (concurring in part, dissenting in part).

I concur in sustension of the writ and in all of the opinion of the court majority except the part relating to charging the public with attorney fees. I think that part of the opinion involves a legislative function. My views are stated in *Webster County Board of Supervisors v. Flattery*, 268 N.W.2d 869, 878–80 (Iowa 1978) (Uhlenhopp, J., concurring specially), and *English v. Missildine*, 311 N.W.2d 292, 294–96 (Iowa 1981) (Uhlenhopp, J., concurring specially).

Each year the Iowa District Court has a large number of contempt cases of various kinds. In some cases incarceration is not necessary; the contemner performs under the threat of the proceeding, or after a lecture by the court, or following the levy of a fine. But in many cases incarceration is required because of the aggravated contempt or in order to get results. Numerous of these contemners are indigent, especially in the domestic relations cases.

The problem is not whether contemners are entitled to counsel in the incarceration cases. They clearly are entitled to counsel. The problem is, who is going to stand the expense of counsel for indigent contemners? Traditionally the bar has represented these individuals, largely *pro bono*. In some places private or public legal aid organizations have done so. Now, however, without a statute, the court holds that payment is to

be made from public funds. These cases are numerous, counsel will be entitled to full undiscounted fees under section 815.7 which the court cites, and in the aggregate we are talking about a large amount of public money.

As I pointed out in *Flattery*, the elected legislators have the burden of levying taxes and the corresponding right of saying how the revenue is spent. To the present time the legislature has not enacted a statute authorizing counsel fees for indigent contemners. I would hold that the burden of representing those individuals remains where it has always been, on the bar, unless and until the General Assembly enacts legislation providing otherwise. I do not find anything in the Constitution which authorizes us to appropriate public funds for representation in these cases. Just as we require the other two branches of government to observe the separation of powers doctrine with care on their part, we should observe the doctrine scrupulously on our own part.

A substantial majority of jurisdictions, including federal courts, *Dolan v. United States*, 351 F.2d 671 (5th Cir. 1965); *United States v. Dillon*, 346 F.2d 633 (9th Cir. 1965), *cert. denied*, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966); *Miller v. Pleasure*, 296 F.2d 283 (2nd Cir. 1961), *cert. denied*, 370 U.S. 964, 82 S.Ct. 1592, 8 L.Ed.2d 830 (1962); *Nabb v. United States*, 1 Ct.Cl. 173 (1864), deny the right to attorney fees from the public treasury in the absence of statute. Annot., 21 A.L.R.3d 819, 822–24 (1968). This court has allowed such compensation in criminal and juvenile proceedings where statutes authorized appointment of attorneys for the accused—a situation we do not have here. *Hall v. Washington County*, 2 Greene 473 (Iowa 1850); *Ferguson v. Pottawattamie County*, 224 Iowa 516, 278 N.W. 223 (1938). In *Hall* the district court appointed J. C. Hall, an attorney, to represent a pauper who was charged with murder. The court acted pursuant to a statute which provided: "The court shall assign counsel to defend the prisoner in case he cannot procure counsel himself." 2 Greene at 474. After the criminal trial, the attorney sought his fee from the county. This court used language which might be construed as espousing the minority position. The fact of the matter, however, was that a statute authorized appointment of counsel. This court stated:

Mr. Hall was duly appointed. He acted by authority of the court. The court acted in obedience to the express mandate of the statute. Here, we think is a case of statutory obligation, fixing a liability on the proper county to pay for the services of the attorney. The service rendered was not voluntary on the part of the court or the attorney, but it was in obedience to law. The court was bound to comply with the requirement of the statute; and the attorney, as an officer of the court, could not refuse to act. Where an act of service is performed in obedience to direct mandate of statutory law, under the direction of a tribunal to which the enforcement of that law is committed, reasonable compensation to the person who performs that service is a necessary incident; otherwise, the arm of the law will be too short to accomplish its designs. If attorneys, as officers of the court, have obligations under which they must act professionally, they also have rights to which they are entitled, and which they may justly claim in common with other men in the business of life. Among these rights, that of reasonable compensation for services rendered in their profession is justly to be considered. The exercise of judicial power, in order to effectuate the common and statute law, frequently becomes necessary, and must exist incidentally. By virtue of such power, auditors, commissioners, masters in chancery, &c, are appointed and act, and proper compensation is awarded to them. All the officers of the court are recognized as being on just consideration entitled to fees for official services performed. All that has been done by the law is merely to limit them in amount. Why should the attorney at law be made an exception to this general principle? We see no good reason for it. His time,

labor and professional skill are his own. He should not be required to bestow them gratuitously at the will of the court, any more than should any other officer. But it is enough here to say that, whilst the statute requires the court to appoint counsel in a case like this, it is silent on the subject of pay for his services. It leaves that matter to be disposed of upon the principles of the practice of the common law. There certainly is no legal exception as to an attorney, so as to distinguish his case from any other functionary. In deciding the case of *Whicher v. Cedar Co.*,[1] the court took the ground, "that there is no statute providing for compensation for services rendered in such cases. If the board of county commissioners choose to compensate an attorney for such services, we see no objection. But this is a matter left to their discretion." We cannot see how this position could operate in denial of the plaintiff's right of action. It seems to be admitted there, that the attorney was entitled to pay for his services. That the commissioners had proper authority to allow his fees; but it is decided that they might make the allowance or not, in their discretion. This, we think, is untenable. If the attorney was entitled to his compensation, under the law, and if the commissioners were authorized to pay him for his services, they had and could exercise no discretionary power. They are officially existent only by operation of the statute law. They could only act under its authority. In this case, the right of an action in the plaintiff does not arise from an express contract; but it is necessarily given by the statute. The statute authorizes the appointment of counsel, in defence of a pauper when accused of crime, in view of the right of that counsel to compensation for the service rendered, in obedience to that law, as an incident necessarily attaches a liability for the services to the county which is properly chargeable with the maintenance of the proceeding. This view of the case is sus-

tained by the supreme court of Vermont. *Wolcott v. Wolcott*, 4 Vt., 37; *Vermillion Co. v. Knight*, 1 Scam., 97.

In the case of *Whicher v. Cedar Co.*, the court adverts to the necessity of legislative interference in order to provide for compensation of this kind. We are of the opinion, that the act requiring the court to appoint counsel for the prisoner is quite sufficient for that purpose, as we have shown. If it were not, however, when the duty enjoined had been performed by the counsel, his right to his pay for it had accrued. The prisoner being a pauper, the liability attached to the county of which he was a citizen. The right of the attorney to compensation was complete, without further legislative enactment. This is not a case of voluntary services. It is a fundamental rule of right, established by the constitution of the United States, "that private property shall not be taken for public use without just compensation." The service was required by competent legal authority, which, having been rendered, the attorney is entitled to his pay for it.

*Id.* at 476–78.

In *Ferguson* the juvenile court appointed attorneys to represent juveniles, acting under section 3631 of the Code of 1935: "The court may, at any time after the filing of the petition, appoint an attorney or other suitable person to represent and appear for said child." At the conclusion of the juvenile proceedings the court allowed the attorneys their fees of the county, which refused to pay. This court, relying principally on *Hall*, allowed the fees of the county, saying:

It is true that section 3631 makes no provision as to the amount of the compensation to be allowed for the services performed. In this case the court appointing the attorneys for the delinquents was acting in obedience to express statutory authority, and, as such, an obligation arose on the part of the county to pay for the services rendered. These services were not rendered voluntarily, but in obe-

---

**1.** 1 Greene 217 (Iowa 1848).

dience to statute. Under such circumstances an obligation arises on the part of the county to pay a reasonable compensation therefor.

. . . .

In the case at bar the court had full statutory authority to make the appointments. The services under the appointments were performed by the attorneys so appointed, and they are therefore entitled to reasonable compensation therefor.

*Id.* 224 Iowa at 518, 519–20, 278 N.W. at 224, 225.

This court did not hold that public funds may be used to pay attorneys, without a statute authorizing appointment of attorneys, in *Schmidt v. Uhlenhopp*, 258 Iowa 771, 140 N.W.2d 118 (1966). In that case a statute existed which authorized both appointment of attorneys and payment of their fees. §§ 775.4, 775.5, The Code 1962, *as amended by* 61 G.A., ch. 449, § 1 (1965). The question in the case was whether Schmidt was in fact indigent. This court held on the record that he was.

I agree that a statute authorizing a court to appoint an attorney for an indigent facing incarceration demonstrates legislative intent that the public is liable for a fee. In the contempt situation, however, the General Assembly has not seen fit to enact such a statute.

The courts cannot give themselves legislative power to expend public funds for attorney fees by construing the Constitution to prohibit incarceration of unrepresented indigents. That course of reasoning would mean that when courts hold constitutional due process requires certain procedures, as courts frequently do, the courts could fund those procedures because the Constitution requires them. Construction of the Constitution is a *judicial* function, but the second step, funding the constitutionally required measures, is a *legislative* function. Indigents charged with felonies in federal court have long had a constitutional right to attorneys, but for generations, and until Congress acted, those attorneys received no public funds.

In these times of high overhead, *pro bono* representation of indigent contemners places a heavy burden on the bar, at least where public or private legal aid organizations do not exist. A persuasive argument can be made to the General Assembly that the burden ought to be alleviated, perhaps by adding responsibility for representation to the functions of public defenders. That is a policy matter, however, for the legislative branch.

Courts naturally desire to solve problems completely which come to them. Under our system of separated powers, however, some problems coming to the courts necessitate the involvement of the other branches of government. The contempt proceeding is such an area.

McGIVERIN, J., joins in this dissent.